***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Upon conclusion of its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Commission has jurisdiction over the parties and over the subject matter. *Page 2 
2. On February 6, 2006, an employer-employee relationship existed between plaintiff and defendant-employer.
3. On February 6, 2006, Berkley Insurance Company of Richmond, Virginia was the insurance carrier at risk for payment of workers' compensation claims for defendant-employer's employees, including plaintiff.
4. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
5. Plaintiff's average weekly wage is $271.81, with a corresponding compensation rate of $181.20.
6. The parties stipulated into evidence Stipulated Exhibit 1, Pretrial Agreement.
7. The parties stipulated into evidence Stipulated Exhibit 2A, North Carolina Industrial Commission Forms and Letters.
8. The parties stipulated into evidence Stipulated Exhibit 2B, Medical Bills Balance Sheet.
9. The parties stipulated into evidence Stipulated Exhibit 2C, Medical Records for treatment received from February 6, 2006 through March 6, 2006.
10. The parties stipulated into evidence Stipulated Exhibit 3A, Recorded Statement of Plaintiff.
11. The parties stipulated into evidence Stipulated Exhibit 3B, Plaintiff's Answers to Defendants' First Set of Interrogatories.
12. The parties stipulated into evidence Stipulated Exhibit 3C, Digital Photos of Machinery. *Page 3 
13. The issue to be reviewed is whether plaintiff is barred pursuant to N.C. Gen. Stat. § 97-12(2) from receiving workers' compensation benefits for his injury at work on February 6, 2006?
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 41 years of age. Plaintiff completed the ninth grade and obtained a high school equivalency certificate by passing the General Educational Development Test ("GED"). Plaintiff began working for defendant-employer in May 2005 as a band saw operator. In September 2005, plaintiff stopped operating the band saw and began operating the hand shaper machine.
2. The hand shaper machine is used to cut a groove in pieces of wood that are approximately three inches thick, two inches wide, 3 feet long, and weigh approximately two to three pounds. The hand shaper machine is equipped with safety rings that only allow the blade to stick out 1/4th of an inch past the rings. One ring is positioned at the top of the machine and acts as a guide ring and a safety ring.
3. Proper use of the hand shaper machine requires that the operator's hands be placed on top of the wood when guiding it through the machine. If the operator's hands are on top of the wood and the machine grabs the wood, the operator's hands should not come into contact with the blade but the blade would hit the safety ring first. If used properly, the operator's fingers would approach the blade with the left pinky finger leading. Plaintiff understood the proper way to operate the hand shaper machine. *Page 4 
4. Defendant-employer's company has been in business for twenty years and in those twenty years, prior to plaintiff's injury, there had never been an accident or safety incident on the hand shaper machine.
5. Plaintiff testified that he used cocaine probably three different times while attending a Super Bowl party between the hours of 2:00 p.m. and 6:00 or 7:00 p.m. on February 5, 2006. Plaintiff denied the use of cocaine on February 6, 2006.
6. On February 6, 2006, plaintiff came to work at 7:00 a.m. Plaintiff took his scheduled work break from 9:00 a.m. to 9:15 a.m. and returned to work following the break. At approximately 10:00 a.m., 45 minutes after returning from break, plaintiff injured his left index finger while operating the hand shaper machine. If plaintiff were operating the hand shaper machine correctly, the finger closest to the blade would have been his left pinky finger.
7. Following his injury, another employee transported plaintiff to Hart Industrial Clinic, where plaintiff presented to Dr. Allen Edwards, an occupational medicine physician. Plaintiff was treated for a severe laceration to his left index finger. Dr. Edwards performed minor surgery to remove plaintiff's remaining nail plate and sutured the rest of the wound.
8. While at the Hart Industrial Clinic, a urine sample was obtained from plaintiff at approximately 12:10 p.m. The lab report from this sample indicated a positive test result for cocaine metabolites with a quantitative result of 22,709 nanograms per milliliter. This quantitative amount is approximately seventy times the amount required to cause the test to produce a positive result on the lab report. The initial amount required as a cut off to produce a positive result is 300 nanograms per milliliter of the cocaine metabolite. Dr. Edwards testified that there was no dispute that when he saw plaintiff in the morning on February 6, 2006, plaintiff had cocaine in his system. *Page 5 
9. Following plaintiff's treatment at Hart Industrial Clinic on the day of injury, Dr. Edwards released plaintiff to return to work, but limited his use of the left index finger. Plaintiff missed no time from work as a result of his injury and returned to work, performing one-handed work duties. Plaintiff continued under the care of Dr. Edwards until March 24, 2006, when he was released to regular duty work capacity. Dr. Edwards assigned plaintiff a twenty-five percent (25%) impairment rating to his left index finger.
10. On February 14, 2006, defendant-employer terminated plaintiff for a positive drug test result in violation of defendant-employer's policy. After his termination, plaintiff found employment with Synthetic Finishing located in Hickory, North Carolina, where he continued to be employed at the time of the hearing before the Deputy Commissioner.
11. Dr. Allen Edwards was deposed by the parties and tendered as a specialist in occupational and family medicine, without objection. Neither occupational medicine nor family medicine specialties involve extensive training or expertise in toxicology/pharmacology. Based on the testing results, Dr. Edwards opined that plaintiff's use of cocaine was likely within 24 hours and that it is possible that the use of cocaine could have contributed to plaintiff's accident.
12. Dr. Shayne C. Gad was deposed by the parties and tendered as an expert in toxicology, without objection. Dr. Gad holds a Ph.D. in pharmacology/toxicology, is certified as a Diplomat of the American Board of Toxicology, and is also a fellow of the Academy of Toxicology Sciences. Dr. Gad was asked to review the drug test and information related to the accident and assess whether the use of cocaine contributed to the accident.
13. Dr. Gad testified that the level of cocaine metabolite contained in plaintiff's blood approximately two hours after his accident at work "would be associated with significant use (of cocaine) shortly or within a couple of hours of the time the urine was collected." Dr. Gad further *Page 6 
testified that plaintiff's metabolite level was consistent with his using cocaine on February 6, 2006 between 9:00 and 9:15 a.m. during his work break, but that the metabolite level was not consistent with plaintiff's testimony that he only used cocaine the day before his injury.
14. Dr. Gad concluded in his report that given the magnitude of the level of cocaine metabolite that was measured, 22,709 nanograms per milliliter, "it is most consistent with very significant use immediately prior to the accident. Based on my experience and the literature it is my professional opinion that cocaine use immediately before the occurrence of Mr. Bates' accident was directly contributory to the occurrence of the accident."
15. Based upon the testimony of Dr. Edwards and Dr. Gad, the Full Commission finds that the drug test administered by the Hart Industrial Clinic was conducted in a manner generally acceptable to the scientific community.
16. With regard to plaintiff's alleged intoxication, the Full Commission gives greater weight to the opinion of Dr. Gad, as an expert in toxicology, than that of Dr. Edwards.
17. The Full Commission finds that plaintiff failed to produce sufficient credible evidence to rebut the presumption of impairment created by his positive drug test for cocaine. To the contrary, Dr. Gad testified to a reasonable degree of scientific certainty that plaintiff was impaired from his use of cocaine at the time of his injury on February 6, 2006 based upon the level of cocaine metabolite contained in plaintiff's urine sample taken two hours after his injury.
18. Based upon the greater weight of the evidence of record, including the testimony of Dr. Gad, the Full Commission finds that plaintiff was under the influence of cocaine as defined by N.C. Gen. Stat. § 97-12 at the time of his injury and that such impairment proximately caused plaintiff's injury on February 6, 2006.
 *********** *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSION OF LAW
1. Based upon the finding that plaintiff was under the influence of cocaine as defined by N.C. Gen. Stat. § 97-12 at the time of his injury and that such impairment proximately caused plaintiff's injury on February 6, 2006, plaintiff is not entitled to compensation under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-12.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusion of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for compensation under the North Carolina Workers' Compensation Act must be, and the same is hereby, denied.
2. Each side shall bear its own costs.
This the __ day of June 2008.
S/________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/________________ BERNADINE S. BALLANCE COMMISSIONER
 S/________________ BUCK LATTIMORE COMMISSIONER